**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 13 |
| Mendel Paneth, | Case No. Case No. 22-41414- nhl |
| Debtor. | |
| Mendel Paneth and Sarah Paneth a/k/a Sury Paneth, | Adv. Pro. No. 1-24-01006-nhl |
| Plaintiffs, | |
| -against- | |
| David Reiner, Joseph Reiner a/k/a Yossi Reiner, JCR Printing Inc., Rabbi Moshe Bergman, Congregation Bnei Avrohom, Tele Go Inc, Baruch A. Boas a/k/a Avi Boas, Chaim Kohn, Infinite Solutions NY Inc, Elliot Blumenthal, Rabbinical Court of Boro Park, Beis Din Beis Yoseph, Rabbi Reuven Pinchas Alt, Rabbi Asher Landau, Mendel Reiner, Rabbi Gershon Spiegel, Bais Din of Mechon L'Hoyroa, Rabbi Yechiel Blum, Beth Din CRC a/k/a Beit Din of Hisachdus, Rabbi Mendel Silber, Rabbi Shaim Shlomo Iliovits a/k/a Shlomo Chaim Iliovits a/k/a Shloime Iliovits a/k/a Chaim Iliovits, Congregation Galanta Oir Pnei Yehoshua, Rabbi Isaac Eichenstein, and Yosef Freund, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**BY DEFENDANTS JOSEPH REINER, JCR PRINTING INC.,**
**TELE GO INC, BARUCH A. BOAS, CHAIM KOHN,**
**INFINITE SOLUTIONS NY INC, AND ELLIOT BLUMENTHAL**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ................................................................................................................ 1

   A.  The Controversy ...................................................................................................... 1

   B.  The Vendor Defendants............................................................................................ 3

ARGUMENT ...................................................................................................................... 5

   I.  Plaintiffs Fail to State a Claim for a Violation of 18 U.S.C. § 1962(c)
      (Counts 2, 3 and 4) ................................................................................................ 6

     A. Plaintiffs fail to plead the essential elements of any alleged predicate act. .................... 7

     B. Plaintiffs fail to allege a pattern of racketeering activity. ............................................. 12

     C. Plaintiffs fail to allege a cognizable RICO enterprise in which the
       Vendor Defendants participated. ................................................................................... 12

     D. Plaintiffs fail to allege injury to their business or property by reason of
       any alleged civil RICO violation by the Vendor Defendants. ........................................ 15

   II.  Plaintiffs Fail to State a Claim for Conspiracy In Violation of 18 U.S.C. § 1962(d) ........ 17

CONCLUSION.................................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 K & D Corp. v. Concierge Auctions, LLC*,
2 F. Supp. 3d 525 (S.D.N.Y. 2014) ............................................................... 17

*Aliev v. Borukhov*,
No. 15-CV-6113 (ERK)(JO), 2016 WL 3746562 (E.D.N.Y. July 8, 2016) ........................ 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 5

*Bernstein v. Misk*,
948 F. Supp. 228 (E.D.N.Y. 1997) ........................................................... 6, 8

*Boyle v. United States*,
556 U.S. 938 (2009)............................................................................. 13

*Curtis v. Greenberg*,
No. 22-252-CV, 2023 WL 6324324 (2d Cir. Sept. 29, 2023) .................................... 14

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
587 F. App'x 663 (2d Cir. 2014) .............................................................. 17

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018).................................................................... 14

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001).................................................................... 6

*DeFazio v. Wallis*,
500 F. Supp. 2d 197 (E.D.N.Y. 2007) ......................................................... 9

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
671 F. Supp. 3d 387 (S.D.N.Y. 2023)...................................................... 13, 17

*Farinella v. Paypal, Inc.*,
611 F. Supp. 2d 250 (E.D.N.Y. 2009) ......................................................... 15

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004)................................................................... 11

*Fischkoff v. Iovance Biotherapeutics, Inc.*,
339 F. Supp. 3d 408 (S.D.N.Y. 2018) ........................................................... 11

*Fossil Grp., Inc. v. Angel Seller LLC*,
627 F. Supp. 3d 180 (E.D.N.Y. 2022) ................................................... 13, 14

*H.J., Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) ........................................................................... 9, 12

*Hecht v. Com. Clearing House, Inc.*,
897 F.2d 21 (2d Cir. 1990) ................................................................... 17

*Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*,
665 F. Supp. 2d 239 (S.D.N.Y. 2009) ........................................................... 7

*Holmes v. Secs. Investor Prot. Corp.*,
503 U.S. 258 (1992) ............................................................................. 15

*Jordan v. Tilzer*,
No. 21-1938, 2022 WL 16544335 (2d Cir. Oct. 31, 2022) ........................................ 6

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999) ................................................................... 15

*Leung v. Law*,
387 F. Supp. 2d 105 (E.D.N.Y. 2005) ......................................................... 16

*Limtung v. Thomas*,
No. 19-CV-3646 (RPK)(MMH), 2021 WL 4443710 (E.D.N.Y. Sept. 28, 2021) ...................... 17

*Manson v. Stacescu*,
11 F.3d 1127 ...................................................................................... 15

*McCoy v. Goldberg*,
748 F. Supp. 146 (S.D.N.Y. 1990) ............................................................. 9

*Mikhlin v. HSBC*,
No. 08-CV-1302 (CPS), 2009 WL 485667 (E.D.N.Y. Feb. 26, 2009) ............................ 6

*Moss v. Morgan Stanley, Inc.*,
719 F.2d 5 (2d Cir. 1983) ..................................................................... 6

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) ............................................................................. 5

*Negron v. Cigna Health & Life Ins. Co.*,
664 F. Supp. 3d 223 (D. Conn. 2023) ......................................................... 13

*Peerenboom v. Marvel Ent., LLC,*
148 A.D.3d 531 (1st Dep't 2017) ............................................. 11

*Rand v. Anaconda-Ericsson, Inc.,*
794 F.2d 843 (2d Cir. 1986)..................................................... 16

*Ray v. Gen. Motors Acceptance Corp.,*
No. 92-CV-5043 (DGT), 1995 WL 151852 (E.D.N.Y. Mar. 28, 1995)..................................... 10

*Red Ball Interior Demolition Corp. v. Palmadessa,*
874 F. Supp. 576 (S.D.N.Y. 1995) ............................................. 7

*Reves v. Ernst & Young,*
507 U.S. 170 (1993)........................................................ 13, 14

*Rickett v. Smith,*
No. 1:14-CV-70-GNS-HBB, 2015 WL 3580500 (W.D. Ky. June 5, 2015)............................ 10

*Saunders v. Davis,*
No. 15-CV-2026 (RC), 2016 WL 4921418 n.6 (D.D.C. Sept. 15, 2016)..................................... 10

*Spool v. World Child Int'l Adoption Agency,*
520 F.3d 178 (2d Cir. 2008)..................................................... 7

*Taylor v State of Georgia,*
315 U.S. 25 (1942)............................................................ 9

*United States v. Sabhnani,*
599 F.3d 215 (2d Cir. 2010).................................................... 9

*Univ. Sports Pub. Co. v. Playmakers Media Co.,*
725 F. Supp. 2d 378 (S.D.N.Y. 2010) ......................................... 11

*Williams v. Affinion Grp., LLC,*
889 F.3d 116 (2d Cir. 2018)..................................................... 6

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.,*
No. 14-CV-7349 (AJN), 2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016)....................................... 6

**Statutes**

18 U.S.C. § 152 ............................................................................................................. 11

18 U.S.C. § 1030 ...................................................................................................... 10, 11

18 U.S.C. § 1341 ............................................................................................................. 9

18 U.S.C. § 1343 ......................................................................................................... 7, 9

18 U.S.C. § 1961 ................................................................................................. 7, 10, 12

18 U.S.C. § 1964(c) ...................................................................................................... 15

## PRELIMINARY STATEMENT

Defendants Joseph Reiner ("Joseph"), JCR Printing, Inc. ("JCR"), Tele Go Inc ("Tele Go"), Baruch A. Boas ("Boas"), Chaim Kohn ("Kohn"), Infinite Solutions NY Inc ("Infinite"), and Elliot Blumenthal, Esq. ("Blumenthal") (collectively, the "Vendor Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim against them and failure to plead fraud with particularity. The Vendor Defendants also join in the arguments made in the motions to dismiss made by the other defendants in this action.

The complaint purports to state claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for violations of 18 U.S.C. § 1962(c) and (d) against 23 different defendants. As against the Vendor Defendants, the complaint contains no well-pleaded allegations to satisfy the elements required to state plausible RICO claims. The complaint must be dismissed.

## BACKGROUND[1]

### A. The Controversy

The underlying complaint stems from a business dispute between defendant David Reiner ("David") and plaintiff Mendel Paneth ("Paneth"). In 2014, Paneth wanted to start a children's magazine aimed at Hasidic youth. Compl. ¶ 2, 10. Non-party Eli Nadler referred Paneth to David as a prospective investor. Compl. ¶¶ 3–4. David, Paneth, and Eli Nadler entered into a written agreement to govern their venture and, pursuant to that agreement, formed Kidline Enterprises, Inc. ("Kidline"), as the entity through which they would publish the magazine called Kidline (in English) or Kindline (in Yiddish), which began publication in December 2014. Compl. ¶¶ 2–9, 17.

---

[1] Because this is a motion under Rule 12(b)(6), the Vendor Defendants, for purposes of the motion only, assume the truth of the well-pleaded factual allegations of the complaint, but do not admit that they are true. The Vendor Defendants are not required to assume the truth of conclusory allegations, or the characterizations asserted by plaintiffs, and do not do so.

At the beginning, David and Paneth each owned 45% of Kidline and Eli Nadler owned the remaining 10%. Compl. ¶ 8. David eventually acquired Eli Nadler's 10% interest, and Paneth transferred his 45% interest to his wife, Sarah (a/k/a Sury) Paneth. Compl. ¶¶ 17 n.4, 64. However, David alone capitalized Kidline with an initial $150,000 investment, with Mendel Paneth serving as editor-in-chief and Sury Paneth providing bookkeeping services for Kidline. Compl. ¶ 17.

Kidline became profitable. David recouped his initial $150,000 investment, and by 2019 Kidline was generating $500,000 in annual profits for the parties to share. Compl. ¶ 17. Plaintiffs elevated their lifestyle, acquiring a home on Staten Island for $950,000 in 2017 and then immediately commencing "substantial renovations." Compl. ¶¶ 66–70. Notwithstanding Kidline's success and the "comfortable lifestyle" it provided plaintiffs, Paneth became unhappy with what he viewed as David's control over Kidline. Compl. ¶ 18. Consistent with their previous agreement to arbitrate any dispute between them, Paneth "sought the outside assistance of a Rabbinic Arbitrator," Compl. ¶ 20, and Paneth and David (and subsequently Sury Paneth) agreed, in writing, to submit their dispute to arbitration, with defendant Rabbi Moshe Bergman serving as the arbitrator.[2] Compl. ¶¶ 88–91.

Unhappy with decisions Rabbi Bergman made in the arbitration proceeding, plaintiffs filed a series of lawsuits in New York Supreme Court in Kings County and Richmond County, Compl. ¶¶ 134, 138, 150, 152, which were dismissed in favor of the arbitration pending before Rabbi Bergman. Compl. ¶ 192. Unhappy with that turn of events, and the resumed arbitration proceeding, Paneth filed a Chapter 11 case in June 2022. Compl. ¶ 291. When he failed to timely file a plan of reorganization within the exclusivity period, and David filed his own plan, Paneth converted his case to Chapter 13. Bankr. ECF Nos. 47–48, 170.

---

[2] The arbitration began with David and Paneth, with Sury Paneth agreeing to join later. Compl. ¶¶ 157–63.

On January 17, 2024, plaintiffs commenced this adversary proceeding by filing a complaint alleging five claims against 23 different defendants. Adv. Pro. ECF No. 1. Count 1 purports to allege a claim under sections 1 and 2 of the Sherman Act, and Counts 2 through 5 purport to allege substantive and conspiracy violations of RICO. Compl. ¶¶ 317–72. The complaint also purports to include an objection by Paneth to the proofs of claim that David, Kidline, and Yosef Freund filed in Paneth's bankruptcy case.

The complaint is long and prolix, and much of it is outright paranoia. Paranoia, however, does not translate into a cause of action, and certainly does not translate into a Sherman Act or RICO claim.

### B.  The Vendor Defendants

The Vendor Defendants have the most peripheral of roles in the tall tale that plaintiffs seek to spin. Nevertheless, plaintiffs seek to include each of them as a defendant in Counts 2, 3, 4, and 5 of the complaint, all purporting to sound in violations of 18 U.S.C. §§ 1962(c) and (d). Important for the Vendor Defendants' motion, there are no specific factual allegations that any of the Vendor Defendants committed any of the alleged predicate acts, and there are no specific allegations that would support wire or mail fraud against any of them.

Defendant Joseph Reiner is alleged to be the brother of David and the principal shareholder of defendant JCR. Compl. ¶¶ 33–34. The complaint alleges that David insisted that Kidline hire JCR to be the exclusive printer for Kidline in 2015, that JCR was overcharging Kidline for printing services, and that David coerced Paneth to hire JCR without competitive bidding. Compl. ¶¶ 59–61. The complaint also alleges that David received a share of JCR's profits, but does not set forth any specific facts that would support a reasonable inference that actually occurred. Compl. ¶ 61. Sury Paneth sued JCR and Joseph in state court alleging claims individually and derivatively on behalf of Kidline. Compl. ¶ 152.

Defendant Tele Go is a telephone provider that David allegedly insisted that Kidline use. Compl. ¶ 82. Plaintiffs allege that the phone service was poor and that they wanted to change providers. Compl. ¶¶ 82–84, 118–21. Plaintiffs complain that David would not allow Kidline to switch to another provider, but they apparently eventually did so. Compl. ¶¶ 125–33. Like JCR and Joseph, Sury Paneth sued Tele Go in state court individually and derivatively on behalf of Kidline. Compl. ¶ 134.

Defendant Infinite is an information technology company that Kidline hired as its IT consultant. Compl. ¶ 143. Defendant Kohn is alleged to be the principal shareholder of Infinite. Compl. ¶ 40. Like JCR, Joseph, and Tele Go, Sury Paneth sued Infinite and Kohn in state court individually and derivatively on behalf of Kidline. Compl. ¶ 150.

Defendant Blumenthal, an attorney, represented the Vendor Defendants (except for Boas, whom Sury Paneth did not sue) in the state court lawsuits that Sury Paneth commenced against them individually and derivatively on behalf of Kidline. Compl. ¶¶ 41, 134, 150, 152. All of the litigations were dismissed in favor of the arbitration pending before Rabbi Bergman. Compl. ¶ 192. The complaint generally complains that Blumenthal's clients' interests were not aligned with Kidline, Compl. ¶¶ 179–90, but it fails to forth any factual allegations that Blumenthal did anything wrong or improper. Plaintiffs allege in a conclusory fashion that Blumenthal had a conflict of interest, Compl. ¶ 188, but do even attempt to explain the facts giving rise to the alleged conflict. Plaintiffs never allege that Blumenthal represented Kidline or either of them, making the conflict allegation particularly bizarre. In all the litigation in which Blumenthal was adverse to plaintiffs, and plaintiffs never moved to have him disqualified (nor would they have had any grounds to).

Defendant Boas is alleged to have been designated by David to be the administrator of Kidline's phone system. Compl. ¶ 82.

4

None of the Vendor Defendants properly belong in this action, or in any litigation at all. But in the scattershot, "take no prisoners" approach that plaintiffs have chosen, the complaint attempts to include all of them in the RICO counts.[3] The effort is preposterous.

## **ARGUMENT[4]**

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (cleaned up). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Facts that suggest "a 'speculative' possibility are not enough." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 385 (2023). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Only Counts 2, 3, 4 and 5 of the complaint—the RICO claims—are alleged against the Vendor Defendants. The complaint comes nowhere close to meeting the applicable pleading standards with respect to the allegations and claims against the Vendor Defendants.

---

[3] The complaint does not attempt to include the Vendor Defendants on the Sherman Act claim (Count 1).

[4] To avoid duplicative briefing, the Vendor Defendants fully join and adopt the arguments with respect to the RICO claims (Counts 2, 3, 4, and 5) made in the support of the motion to dismiss filed by David and Mendel Reiner (the "Reiner Motion").

I.    **Plaintiffs Fail to State a Claim for a Violation of 18 U.S.C. § 1962(c) (Counts 2, 3 and 4)**

"To sustain a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show '(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains and interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'" *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). A plaintiff also must show that "he was injured in his business or property by reason of a violation of § 1962." *Bernstein v. Misk*, 948 F. Supp. 228, 234 (E.D.N.Y. 1997).

"Section 1961(1) sets forth an exhaustive list of predicate 'acts' that can constitute a pattern of 'racketeering activity,' including section 1341 and 1343 (mail and wire fraud, respectively)." *Williams*, 889 F.3d at 124. "The requirements of section 1962(c) must be established as to each individual defendant." *DeFalco v. Bernas,* 244 F.3d 286, 306 (2d Cir. 2001); *see Mikhlin v. HSBC*, No. 08-CV-1302 (CPS), 2009 WL 485667, at *5 (E.D.N.Y. Feb. 26, 2009) ("When bringing a RICO claim against multiple defendants, the plaintiff must allege that each defendant committed two or more predicate acts."). Allegations of predicate acts that "ascribe actions to all Defendants as an undifferentiated group" are conclusory, "fail to meet the plausibility standard and cannot survive a motion to dismiss." *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, No. 14-CV-7349 (AJN), 2016 WL 1298987, at *5 (S.D.N.Y. Mar. 31, 2016).

With respect to allegations of wire and mail fraud that allegedly serve as predicate acts under plaintiffs' RICO claims, the complaint must also satisfy the more stringent requirements of Rule 9(b). *Jordan v. Tilzer*, No. 21-1938, 2022 WL 16544335, at *1 (2d Cir. Oct. 31, 2022) ("[M]ail and wire fraud claims are subject to the heightened pleading standard of Fed. R. Civ. P.

9(b) and, therefore, must be pleaded with particularity, even as RICO predicates."); *Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 260 (S.D.N.Y. 2009) ("Where predicate acts are based on fraudulent conduct, plaintiffs must comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure to state a claim under RICO."). "When alleging mail or wire fraud, this means that a plaintiff must allege, 'the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent.'" *Ho Myung Moolsan Co.*, 665 F. Supp. 2d at 260 (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008)).

**A.  Plaintiffs fail to plead the essential elements of any alleged predicate act.**

The complaint identifies the following seven statutes, which plaintiffs allege—without any supporting facts—serves as the predicate acts for all four of the RICO claims they allege (Counts 2, 3, 4, and 4):

(a)  Multiple instances of mail fraud in violation of 18 U.S.C. § 1341;
(b)  Multiple instances of wire fraud in violation of 18 U.S.C. § 1343;
(c)  Multiple instances of subjecting Mendel Paneth to Peonage in violation of 18 U.S.C. § 1581;
(d)  multiple instances of money laundry in violation of 18 U.S.C. 1956;
(e)  Multiple instances of breaking into computers in violation of 18 U.S.C. § 1030;
(f)  Multiple instances of Hobbs Act violation, 8 U.S.C. § 1951; and
(g)  filing false claims in bankruptcy court in violation of 18 U.S.C. § 152

Compl. ¶¶ 346, 352, 362, 371. One the seven statutes mentioned in the complaint—breaking into computers (18 U.S.C. § 1030)—is not even listed in 18 U.S.C. § 1961 and therefore is not a RICO predicate act. *See Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 586 (S.D.N.Y. 1995) ("Those offenses which may serve as predicate acts for a RICO claim are exclusively listed in § 1961."). As to the others, the complaint falls woefully short of pleading the facts required to plausibly allege that each of the Vendor Defendants committed two or more such acts in violation of the statutes referenced.

"A [RICO] complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *Bernstein*, 948 F. Supp. at 238. Here, plaintiffs fail to allege any mailings or wires that any of the Vendor Defendants even made, let alone how such mailing or wire (which plaintiffs have not described) plausibly constituted mail or wire fraud. *See Id.* at 239 ("A claim of mail or wire fraud must specify the content, date and place of any alleged misrepresentations and the identity of the persons making them."). Wire fraud also requires a showing that the wire "actually crosses interstate lines." *Aliev v. Borukhov*, No. 15-CV-6113 (ERK)(JO), 2016 WL 3746562, at *8 (E.D.N.Y. July 8, 2016); *see Bernstein*, 948 F. Supp. at 238–39. The complaint alleges nothing of the sort with respect to the Vendor Defendants, much less with the particularity required by Rule 9(b).

Plaintiffs complain generally about the quality of Tele Go's phone service and the price of JCR's printing services, but none of those allegations come anywhere close to setting forth a plausible claim that any of the Vendor Defendants committed mail or wire fraud. The complaint alleges that David insisted that Kidline use JCR as its printer, Compl. ¶ 59, but fails to identify any false mailings or wires that JCR allegedly sent. Of course, it is not unusual in the least for the majority shareholder of a closely held company to direct which vendors the company will use. David did nothing unusual here, and the Vendor Defendants did nothing that even approaches mail or wire fraud. If plaintiffs have specific facts that plausibly suggest otherwise, they are not set forth anywhere in their overly long and convoluted complaint.

With respect Blumenthal, the only allegation is that, when Sury sued the other Vendor Defendants, Blumenthal, as their attorney, moved to consolidate and dismiss or stay those actions in favor of the pending arbitration. Compl. ¶ 190. Plaintiffs make a strange, conclusory allegation

that it was only David Reiner who wanted arbitration. Compl. ¶ 191. No matter how much plaintiffs may have disagreed with the motion, they have not shown how Blumenthal making this motion on behalf of his clients constitutes wire fraud in violation of 18 U.S.C. § 1343 or mail fraud in violation of 18 U.S.C. § 1341.[5] The notion that it was only David, and not the other Vendor Defendants, who wanted to have the claims against them dismissed not only fails to reach the level of possibility, or even speculation, it is bizarre.

As to peonage, there are no facts alleged in the complaint that plaintiffs were subjected to peonage by any of the defendants, let alone the Vendor Defendants. "Peonage is compulsory service in payment of a debt that can be real or artificially created." *United States v. Sabhnani,* 599 F.3d 215, 243 (2d Cir. 2010); *see also Taylor v State of Georgia*, 315 U.S. 25, 29 (1942) ("[P]eonage is a form of involuntary servitude within the meaning of the Thirteenth Amendment."). The complaint does not set forth any well-pleaded allegations of fact that plausibly show that any of the Vendor Defendants forced either of the plaintiffs into a condition of peonage. Indeed, as demonstrated in the Reiner Motion, there are no plausible allegations showing that any of the defendants forced plaintiffs into peonage, let alone the Vendor Defendants. Plaintiffs may be unhappy with the Vendor Defendants. They may even be unhappy with the services they provided Kidline. It might even be the case that Kidline hired the Vendor Defendants (save for Blumenthal) at David's insistence. But none of that is unusual, and none of that remotely suggests that the Vendor Defendants forced Paneth into peonage in violation of 18 U.S.C. § 1581(a).

---

[5] It is unlikely that the motion could even fall within either 18 U.S.C. §§ 1341 or 1343. There is no reason to believe that it was by mail, and while it most likely would have been filed over New York's electronic filing system, as Mr. Blumenthal is an attorney practicing in New York, the transmission would not involve an interstate wire as 18 U.S.C. § 1343 requires. *See DeFazio v. Wallis*, 500 F. Supp. 2d 197, 204 (E.D.N.Y. 2007) ("Where all parties are New York residents, all telephone calls are presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated.") (quoting *McCoy v. Goldberg*, 748 F. Supp. 154 (S.D.N.Y. 1990)). And even if the motion could somehow fall within 18 U.S.C. § 1343 (it cannot), that is certainly not a "pattern" of racketeering activity. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989).

Likewise, the complaint comes nowhere close to alleging facts that would plausibly allege that any of the Vendor Defendant engaged in money laundering in violation 18 U.S.C. § 1956. "Generally, to properly state a claim under the money laundering statutes, plaintiff must allege that a defendant knowingly used the proceeds of unlawful activity in a proscribed transaction." *Ray v. Gen. Motors Acceptance Corp.*, No. 92-CV-5043 (DGT), 1995 WL 151852, at *6 (E.D.N.Y. Mar. 28, 1995). No such allegations are made here, especially with respect to the Vendor Defendants.

Plaintiffs' allegations with respect to the supposed money laundering are that David insisted that Kidline write checks to certain charities. Compl. ¶¶ 72–76. Nowhere in the complaint, however, are there any facts that would show that David committed acts that would constitute money laundering in violation of 18 U.S.C. § 1956. With respect to the Vendor Defendants, not one of them is mentioned in the allegations relating to Kidline's payments to charities. Indeed, the complaint does not even contain any conclusory allegations of money laundering with respect to the Vendor Defendants.

As set forth above, plaintiffs' claim concerning the Computer Fraud and Abuse Act (18 U.S.C. § 1030) is not a predicate act under 18 U.S.C. § 1961. *See Saunders v. Davis*, No. 15-CV-2026 (RC), 2016 WL 4921418, at *4 n.6 (D.D.C. Sept. 15, 2016) ("18 U.S.C. § 1030 is not a predicate offense for the purposes of RICO."); *Rickett v. Smith*, No. 1:14-CV-70-GNS-HBB, 2015 WL 3580500, at *4 (W.D. Ky. June 5, 2015) ("Section 1961's list of racketeering activity does not include violations of the CFAA, and thus they may not serve as predicate offenses."). Thus, all of plaintiffs' allegations concerning access to Kidline's systems are irrelevant to the RICO claims. In any event, there are no allegations showing that the Vendor Defendants violated 18 U.S.C. § 1030.

Plaintiffs complain that David decided to change the phone service to Tele Go "[i]nstead of designating computer expert Mendel [Paneth] to be the system administrator, or Sury." Compl.

¶ 82. Plaintiffs complains that David supposedly had access to his Kidline email, Compl. ¶ 149, but it is not disputed that David was an officer of Kidline, its majority shareholder, and entitled to emails on the system.[6] Indeed, according to the complaint, David was the sole officer of Kidline. Compl. ¶ 58. If any of the Vendor Defendants violated 18 U.S.C. § 1030, the complaint does not show how that is so. There are no factual allegations that any of the defendants, let alone the Vendor Defendants, hacked into a computer or exceeded their authorized access to any computer system (let alone plaintiffs' personal computer), as the statute requires.[7] Thus, even if 18 U.S.C. § 1030 was a predicate act (it is not), the complaint does not set forth any facts to show that any of the Vendor Defendants violated the statute.

Finally, the complaint attempt to plead a Hobbs Act violation. As shown in the Reiner Motion, the complaint does not allege facts to plausibly show that a Hobbs Act violation occurred. It certainly does not set forth any facts to show that any of the Vendor Defendants engaged in a Hobbs Act violation.

Lastly, plaintiffs attempt to plead the filing a false claim in bankruptcy under 18 U.S.C. § 152, which forbids various false statements in, or in relation to, bankruptcy proceedings when done "knowingly or fraudulently." "Allegations of bankruptcy fraud, like all allegations of fraudulent predicate acts, are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir.

---

[6] Under New York law, a corporate employee does not have a reasonable expectation of privacy with respect to e-mails sent over the employer's email system. *See Peerenboom v. Marvel Ent., LLC*, 148 A.D.3d 531, 532 (1st Dep't 2017) (corporate CEO "lacked any reasonable expectation of privacy in his personal use of the email system of . . . his employer, and correspondingly lacked the reasonable assurance of confidentiality that is an essential element of the attorney-client privilege"); Paul H. Aloe, *'Scott' Is Dire Warning About E-Mail Communications*, N.Y.L.J. (Dec. 10, 2007), https://www.law.com/newyorklawjournal/almID/1197021872490/.

[7] *See generally Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 417–19 (S.D.N.Y. 2018); *Univ. Sports Pub. Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 383–85 (S.D.N.Y. 2010) (computer systems administrator did not violate 18 U.S.C. § 1030 by using company's database for an improper purpose and did not exceed his authorization in violation of the statute).

2004). The complaint references Claims Nos. 9, 10, and 12, which were filed by David, Kidline, and Yosef Freund, respectively. The complaint does not set forth any facts that show that the filing of those claims in any way violated 18 U.S.C. § 152. In any event, and most importantly for the Vendor Defendants, plaintiffs make no allegation that any of the Vendor Defendants actually filed a bankruptcy claim, false or otherwise.

**B.  Plaintiffs fail to allege a pattern of racketeering activity.**

Because plaintiffs fail to show predicate acts by the Vendor Defendants they perforce cannot meet the pattern element, as set out by the United States Supreme Court in *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989).

As demonstrated by the Reiner Motion, plaintiffs have not alleged either a closed-ended or open-ended pattern of racketeering activity. Given that the pattern element must be satisfied as to each defendant, the failure is even more pronounced as to the Vendor Defendants.

**C.  Plaintiffs fail to allege a cognizable RICO enterprise in which the Vendor Defendants participated.**

The Reiner Motion also shows that the complaint fails to properly allege a RICO "enterprise" within the meaning of 18 U.S.C. § 1961(4). The Vendor Defendants join in and adopt that argument in full.

Counts 2, 3, and 4 appear to differ only in their description of the alleged "enterprise." Count 2 alleges that the "enterprise" is Kidline itself. Compl. ¶ 345. Count 3 alleges that the "enterprise" is an "association-in-fact enterprise," apparently consisting of all the defendants. Compl. ¶¶ 350–52. Count 4 attempts to allege a "Religious Association-in-Fact Enterprise" consisting of defendants Congregation Bnei Avrohom, Beis Din Beis Yoseph, Bais Din of Mechon L'Hoyroa, Beth Din CRC a/k/a Beit Din of Hisachdus, and Congregation Galanta Oir Pnei Yehoshua. Compl. ¶ 359.

An enterprise requires a common purpose and structure. *Boyle v. United States*, 556 U.S. 938, 944–45 (2009); *Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 204 (E.D.N.Y. 2022) ( "Even assuming *arguendo* that Defendants' allegations are sufficient to establish a distinct enterprise and one or more RICO persons, Defendants' proposed RICO claims fail to articulate any cognizable structure to the enterprise."). Furthermore, it is not enough merely to allege that an enterprise exists (here, there is none). Plaintiffs also must demonstrate with factual allegations each defendant's role in directing the alleged enterprise.

As set forth by the United States Supreme Court in *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993):

> In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.

And as recently articulated in *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 412 (S.D.N.Y. 2023):

> There can [be] no liability under section 1962(c) if the defendant did not participate in the conduct of an enterprise. To participate in a racketeering enterprise under the relevant provisions of RICO, a defendant must "direct the enterprise's affairs." While a defendant need not play the "predominant" part in the operation of the enterprise, it must "exert" some "control" over it.

*See also Negron v. Cigna Health & Life Ins. Co.,* 664 F. Supp. 3d 223, 229–30 (D. Conn. 2023) (assuming that plaintiffs proposed enterprise had a common fraudulent purpose, the allegations would still fail as they failed to show defendants played any role in directing its affairs).

None of these elements of participation is even remotely alleged with respect to the Vendor Defendants. As to the so-called "Religious Association-in-Fact Enterprise" alleged in Count 4, the complaint does not include any of the Vendor Defendants as a member of that "enterprise," let

alone having directed its non-existent affairs. Compl. ¶¶ 359. For that reason alone, Count 4 is insufficient against the Vendor Defendants and they should be dismissed for that reason alone

Count 2 alleges that Kidline is the enterprise. Compl. ¶ 345. But there are no factual allegations showing that any of the Vendor Defendants directed the affairs of Kidline.

Count 3 alleges in conclusory fashion that there is an association-in-fact enterprise including all of the defendants. Compl. ¶ 352. But the allegation is completely conclusory and wholly insufficient. *See Fossil Grp., Inc.*, 627 F. Supp. 3d at 204 (quoting *Reves*, 507 U.S. at 185) ("[A]lthough Defendants' proposed counterclaims invoke the language of RICO structure, other than a couple of fleeting assertions — such as the conclusory allegations that Fossil led the enterprise and developed the plan for its purposes — there are insufficient factual assertions from which to infer the structure of the enterprise or an explanation of how the proposed RICO defendants participated in the 'operation or management of the enterprise itself.'"); *see also Curtis v. Greenberg*, No. 22-252-CV, 2023 WL 6324324, at *2 (2d Cir. Sept. 29, 2023) (quoting *D'Addario v. D'Addario*, 901 F.3d 80, 101–02 (2d Cir. 2018)) ("As we have observed, alleging that various defendants 'agreed at different times to engage in various fraudulent schemes' does not 'plausibly support the inference, essential to a RICO association-in-fact enterprise, that they acted with a sufficiently common purpose.'").

The complaint also includes a handful of allegations describing something that plaintiffs call the "Peonage Master Enterprise." Compl. ¶¶ 12–16. Plaintiffs allege the purpose of this "enterprise"—the fourth one referenced in the complaint—"was to subjugate Mendel [Paneth] and turn him into a peon, indentured to [David] Reiner for the rest of his life" and "to create pure punishment." Compl. ¶¶ 12–13. Besides these allegations bordering, if not crossing the line into, outright paranoia, plaintiffs do not even attempt to connect this "enterprise" to any of their RICO

14

claims. Nor do they set forth any basis on which the Vendor Defendants subjugated Paneth or tried

to reduce him to an indentured servant, much less showing that they directed or participated in the

affairs of such an "enterprise."

Simply put, none of the three substantive RICO counts adequately make out the existence

of a racketeering enterprise, let alone show that the Vendor Defendants participated in the conduct

of its affairs. For that reason alone, the complaint fails against the Vendor Defendants.

### D. Plaintiffs fail to allege injury to their business or property by reason of any alleged civil RICO violation by the Vendor Defendants.

Given that the complaint does not allege any predicate acts were committed by any of the

Vendor Defendants, plaintiffs cannot show that the Vendor Defendants proximately caused them

any injury in their "business or property by reason of a violation of section 1962." 18 U.S.C.

§ 1964(c). An injury is "by reason of" a civil RICO violation when the violation is the but-for and

proximate cause of the injury. *See Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268–69

(1992); *Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 262 (E.D.N.Y. 2009). The injury cannot be

personal in nature. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d

229, 241 (2d Cir. 1999). Nor can the injury be derivative to a corporation that the plaintiff owns—

it must be to the plaintiff directly. *See Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993

(1993) ("A shareholder generally does not have standing to bring an individual action against to

the corporation in which he owns stock. This is true even if the plaintiff is the sole shareholder of

the corporation.").

As demonstrated in the Reiner Motion, plaintiffs have suffered no RICO injury sufficient

to sustain a RICO claim as a general matter. With respect to the Vendor Defendants, the failure to

plausibly allege a RICO injury is even more pronounced. Each of the Vendor Defendants was

either a vendor of Kidline or a principal of a Kidline vendor, with the exception of Blumenthal and

Boas. Blumenthal's only sin was that he represented Tele Go, JCR, Joseph, Infinite, and Kohn when Sury Paneth sued them in state court. Compl. ¶ 41. Boas merely served as a contact person for Kidline's phone service account. Compl. ¶ 122. Assuming that any of them actually engaged in a pattern of racketeering activity (they did not), and assuming they caused some injury (they did not) the injury from anything that the Vendors Defendants did, if any, would be to Kidline, not plaintiffs. Neither plaintiff has standing to sue for an injury to Kidline. *See Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986) (holding that shareholders in corporation lacked standing to bring non-derivative civil RICO action because "[t]he legal injury, if any, was to the firm" and "[a]ny decrease in value of plaintiffs' shares merely reflects the decrease in the value of the firm"); *Leung v. Law*, 387 F. Supp. 2d 105, 123 (E.D.N.Y. 2005) ("[T]he direct injuries incurred by the defendants' RICO predicate acts, if any, were suffered by persons or entities other than [plaintiff], and [plaintiff] lacks standing to raise any of his various civil RICO claims.").

Plaintiffs do not plausibly allege that they themselves suffered a direct and proximate RICO injury from any RICO violation committed by any of the Vendor Defendants. They do not even allege that they have a continuing interest in Kidline. The complaint concedes that "Mendel [Paneth] left Kidline to start out on his own company, under the auspices of a solely-owned company, Hundred Publications, LLC ("Hundred"), which published a Yiddish magazine ('Hundred Magazine')." Compl. ¶ 21. Even if plaintiffs could maintain derivative standing (in contravention of well-established Second Circuit law), they cannot even establish that they maintain any interest in Kidline.

16

## II.    Plaintiffs Fail to State a Claim for Conspiracy In Violation of 18 U.S.C. § 1962(d)

Count 4 fails to state a claim for conspiracy to commit a civil RICO offense because plaintiffs fail to show any substantive RICO violation. *See D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 669 (2d Cir. 2014) ("The failure to state a claim for a substantive RICO violation, moreover, is fatal to Plaintiffs' RICO conspiracy claim under § 1962(d).")

Furthermore, there are no facts to show that defendants actually made an agreement to commit any of the acts specified in 18 U.S.C. 1961(a). *See Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d at 412 (quoting *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990)) (holding that plaintiff's "RICO conspiracy claim likewise fails, for she has not alleged any factual basis for a finding of a 'conscious agreement among the defendants'"); *Limtung v. Thomas*, No. 19-CV-3646 (RPK)(MMH), 2021 WL 4443710, at *8 (E.D.N.Y. Sept. 28, 2021) ("Conclusory allegations that the defendants 'agreed to commit' the violations are insufficient."); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014) ("Other than one conclusory allegation that the defendants 'agreed' to commit the violations . . . the plaintiffs have alleged no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations.").

## CONCLUSION

For these reasons, the Vendor Defendants respectfully submit that the Court should dismiss the complaint as against them with prejudice.

17

Dated: New York, New York
      March 29, 2024

By:    */s/ Paul H. Aloe*
        Paul H. Aloe
        David N. Saponara
        KUDMAN TRACHTEN ALOE POSNER LLP
        488 Madison Avenue, 23rd Floor
        New York, New York 10022
        Tel: (212) 868-1010
        paloe@kudmanlaw.com
        dsaponara@kudmanlaw.com

        *Attorneys for Defendants Joseph Reiner a/k/a Yossi*
        *Reiner, JCR Printing Inc., Tele Go Inc, Baruch A.*
        *Boas a/k/a Avi Boas, Chaim Kohn, Infinite*
        *Solutions NY Inc, and Elliot Blumenthal*